AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

### for the
District of Delaware



In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. 21-354M
the premises known as ▮▮▮▮▮▮▮ )
)
)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ District of _____ Delaware _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2252A(a)(2); | Distribution of Child Pornography; |
| 18 U.S.C. 2252A(a)(5)(B) | Possession of Child Pornography |

FILED

The application is based on these facts:

See attached Affidavit.

JAN 1 3 2022

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

U.S. DISTRICT COURT DISTRICT OF DELAWARE

/s/ *Sean Downey*
Applicant's signature

Sean Downey, Special Agent HSI
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

Date: 12/15/2021

Judge's signature

City and state: Wilmington, DE

Sherry R. Fallon, U.S. Magistrate Judge
Printed name and title

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

IN THE MATTER OF THE SEARCH OF          )
(1) the premises known as ███████████. )        Case No. 21-
███████████████ and (2) the person of  )        **Filed Under Seal**
James Ellis Pickett                     )

### AFFIDAVIT IN SUPPORT OF AN
### APPLICATION UNDER RULE 41 FOR A
### WARRANT TO SEARCH AND SEIZE

I, Sean Downey, a Special Agent with the United States Department of Homeland Security,

Homeland Security Investigations ("HSI"), Dover, Delaware Office, being duly sworn, depose and

state as follows:

### INTRODUCTION AND BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules

of Criminal Procedure for a warrant to search the premises known as ████████████████

███████████████ (the "SUBJECT PREMISES") and the person of James Ellis

PICKETT ("PICKETT") (together, the "SUBJECT LOCATIONS"), more fully described in

Attachment A, for the things described in Attachment B.  Attachments A and B are incorporated

herein by reference.

2.      I am a Special Agent ("SA") with HSI and have been so employed since 2010.  I

am currently assigned as the HSI Resident Agent in Dover, Delaware and am additionally assigned

to the Delaware Child Predator Task Force ("DCPTF"), which includes the Delaware Internet

Crimes Against Children Task Force (the "Delaware ICAC").  I have extensive experience in

numerous investigative disciplines to include international trafficking of military-grade exports,

child exploitation, cyber-based investigations, financial crimes, identity theft, narcotics

investigations, fraud, and espionage.  I have significant experience as both a primary case agent

1

and undercover operative in counter proliferation and darknet-related investigations. I have directed multi-agency, classified-level investigations spanning many countries across multiple continents that required coordination across several international entities and U.S. Department of Defense Unified Combatant Commands. I have directed investigations involving multiple foreign government entities and international organizations, including INTERPOL, among others. In addition, I have directed and coordinated dozens of international investigations focused on foreign-based transnational criminal organizations ("TCOs") engaged in human trafficking, child exploitation, child pornography, and human smuggling. I have received substantial training related to counter-proliferations, child exploitation, narcotics trafficking, cryptocurrency analysis, darknet vendors, cyber smuggling, undercover operations, illicit procurement networks, interviewing techniques, surveillance and counter-surveillance techniques, and multiple other criminal investigator-related facets. I have been assigned to the HSI Dover since 2018. Prior to my assignment in Dover, I was assigned to HSI San Diego, California. Prior to my career as a HSI Special Agent, I was a federal law enforcement officer for approximately three (3) years and was assigned to posts in Florida and Washington, D.C.

3.      As a federal agent, I am authorized to investigate violations of laws of the United States, including Title 18, United States Code, Sections 2252A(a)(2) and 2252A(a)(5)(B), and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

4.      As discussed in more detail below, there is probable cause to believe that in August 2021, PICKETT sent child pornography to another individual via Instagram. Such action violates Title 18, United States Code, Sections 2252A(a)(2) (Distribution of Child Pornography) and 2252A(a)(5)(B) (Possession of Child Pornography) (the "SPECIFIED FEDERAL OFFENSES").

2

Moreover, there is probable cause to believe that the SUBJECT LOCATIONS contain contraband and evidence, fruits, and instrumentalities of violations of the SPECIFIED FEDERAL OFFENSES.

5.      The statements contained in this affidavit are based in part on information and reports provided by U.S. federal law enforcement agents; written reports about this and other investigations that I have received, directly or indirectly, from other law enforcement agents, information gathered from the service of administrative subpoenas, the results of physical and electronic surveillance conducted by law enforcement agents, independent investigation and analysis by law enforcement agents/analysts and computer forensic professionals, and my experience, training, and background as a Special Agent. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause to believe that contraband and evidence, fruits, and instrumentalities of the violations of the SPECIFIED FEDERAL OFFENSES are located within the SUBJECT PREMISES.

## SPECIFIED FEDERAL OFFENSES

6.      As noted above, this investigation concerns alleged violations of the following:

•      Title 18, United States Code, Sections 2252A(a)(2) prohibits a person from knowingly receiving or distributing any child pornography or any material that contains child pornography, as defined in 18 U.S.C. § 2256(8), that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; or any material that contains child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any mean, including by computer.

•      Title 18, United States Code, Sections 2252A(a)(5)(B) prohibits a person from knowingly possessing or knowingly accessing with intent to view any material that contains an image of child pornography, as defined in 18 U.S.C. § 2256(8), that has been

3

mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, by any means, including by computer, or that was produced using materials that have been mailed or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

## **DEFINITIONS**

7.      The following definitions apply to this Affidavit and Attachment B:

*      "Chat," as used herein, refers to any kind of text communication over the Internet that is transmitted in real-time from sender to receiver. Chat messages are generally short in order to enable other participants to respond quickly and in a format that resembles an oral conversation. This feature distinguishes chatting from other text-based online communications such as Internet forums and email.

*      "Chat room," as used herein, refers to the ability of individuals to meet in one location on the Internet in order to communicate electronically in real-time to other individuals. Individuals may also have the ability to transmit electronic files to other individuals within the chat room.

*      "Child erotica," as used herein, means materials or items that are sexually arousing to persons having a sexual interest in minors but that are not necessarily obscene or do not necessarily depict minors engaging in sexually explicit conduct.

*      "Child pornography," as defined in 18 U.S.C. § 2256(8), is any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image of picture, whether made or produced by electronic, mechanical or other means, of sexually explicit conduct, where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct.

*      "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, tablets, and mobile phones and devices. See 18 U.S.C. § 1030(e)(1).

*      "Computer hardware," as used herein, consists of all equipment that can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Computer hardware includes any data-processing devices (including central processing units, internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes,

4

and other memory storage devices); peripheral input/output devices (including keyboards, printers, video display monitors, and related communications devices such as cables and connections); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including physical keys and locks).

•　　"Computer passwords and data security devices," as used herein, consist of information or items designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates what might be termed a digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

•　　"Computer software," as used herein, is digital information that can be interpreted by a computer and any of its related components to direct the way they work. Computer software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

•　　A "hash value" is a unique multi-character number that is associated with a computer file. Some computer scientists compare a hash value to an electronic fingerprint in that each file has a unique hash value. Any identical copy of the file will have exactly the same hash value as the original, but any alteration of the file, including even a change of one or two pixels, would result in a different hash value. Hash values represent large amounts of data as much smaller numeric values, so they are used with digital signatures.

•　　The "Internet" is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

•　　"Internet Protocol address" or "IP address," as used herein, refers to a unique number used by a computer or other digital device to access the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer or device accessing the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer or device may be directed properly from its source to its destination. Most Internet Service Providers (ISPs) control a range of IP addresses. IP addresses can be "dynamic," meaning that the ISP assigns a different unique number to a computer or device every time it accesses the Internet. IP addresses might also be "static," if an ISP assigns a user's computer a particular IP address that is used each time the computer accesses the Internet. ISPs typically maintain logs of the subscribers to whom IP addresses are assigned on particular dates and times.

- "Minor," as defined in 18 U.S.C. § 2256(1), refers to any person under the age of eighteen years.

- "Mobile applications," as used herein, are small, specialized programs downloaded onto mobile devices that enable users to perform a variety of functions, including engaging in online chat, reading a book, or playing a game.

- "Records," "documents," and "materials," as used herein, include all information recorded in any form, visual or aural, and by any means, whether in handmade, photographic, mechanical, electrical, electronic, or magnetic form.

- "Remote Computing Service" ("RCS"), as defined in 18 U.S.C. § 2711(2), is the provision to the public of computer storage or processing services by means of an electronic communications system.

- "Sexually explicit conduct," as defined in 18 U.S.C. § 2256(2), means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any person.

- A "storage medium" is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

- "Visual depiction," as defined in 18 U.S.C. § 2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

### SUMMARY CONCERNING CHILD PORNOGRAPHY, PERSONS WHO POSSESS AND COLLECT CHILD PORNOGRAPHY, AND HOW USE OF COMPUTERS AND THE INTERNET RELATES TO THE POSSESSION, RECEIPT AND/OR DISTRIBUTION OF CHILD PORNOGRAPHY

8.     Based on my investigative experience related to child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, I have learned that individuals who utilize the internet to view, download, receive, and/or distribute child pornography are individuals who have a sexual interest in children and in images of children. In addition, there are certain characteristics common to such individuals,

6

including the following:

    a.    Individuals who have a sexual interest in children or images of children may receive sexual gratification, stimulation, and satisfaction from contact with children, or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media, or from literature describing such activity.

    b.    Individuals who have a sexual interest in children or images of children may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Individuals who have a sexual interest in children or images of children oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

    c.    Individuals who have a sexual interest in children or images of children frequently maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Individuals who have a sexual interest in children or images of children typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

    d.    Likewise, individuals who have a sexual interest in children or images of children often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer or cellphone, and surrounding area. These collections are often maintained for several years and are kept close by, usually at the collector's residence, or in online storage, email accounts or other online communication accounts, to enable the individual to view the collection, which is valued highly.

    e.    Individuals who have a sexual interest in children or images of children also may correspond with and/or meet others to share information and materials, rarely destroy correspondence from other child pornography distributors/collectors, conceal such correspondence as they do their sexually explicit material, and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography. This data is typically in digital format, and often maintained on computers, cell phones and in online storage, email accounts or other online communication accounts.

    f.    Individuals who would have knowledge on how to distribute and receive digital images of child pornography through the use of Peer to Peer networks and other online methods would have gained knowledge of its location through online communication with others of similar interest. Other forums, such as bulletin boards, newsgroups, IRC chat or chat rooms have forums dedicated to the trafficking of child

pornography images. Individuals who utilize these types of forums are considered more advanced users and therefore more experienced in acquiring a collection of child pornography images.

   g. Individuals who have a sexual interest in children or images of children prefer not to be without their child pornography for any prolonged time period. This behavior has been consistently documented by law enforcement officers involved in the investigation of child pornography.

  9. Based on my investigative experience related to computer and internet related child

pornography investigations, and the training and experience of other law enforcement officers with

whom I have had discussions, I have learned the following:

   a. Computers and computer technology have revolutionized the way in which child pornography is produced, distributed, and utilized. It has also revolutionized the way in which child pornography collectors interact with each other. Child pornography formerly was produced using cameras and film (either still photography or movies.) The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contact, mailings, and telephone calls. Any reimbursement would follow these same paths.

   b. The development of computers, smartphones and the internet have added to the methods used by child pornography collectors to interact with and sexually exploit children. Computers, smartphones and the internet serve four functions in connection with child pornography. These are production, communication, distribution, and storage.

   c. Mobile devices such as laptop computers, smartphones, iPods, iPads and digital media storage devices are known to be used and stored in vehicles, on persons or other areas outside of the residence.

   d. Smartphones have the capability to access the Internet and store information, such as videos and images. As a result, an individual using a smartphone can send, receive, and store files, including child pornography, without accessing a personal computer or laptop. An individual using a smartphone can also easily plug the device into a computer, via a USB cable, and transfer data files from one digital device to another. Many people generally carry their smartphone on their person.

   e. Child pornographers can now transfer photographs from a camera onto a computer-readable format. With the advent of digital cameras, the images can now be transferred directly onto a computer. A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection.

Electronic contact can be made to literally millions of computers around the world. The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution and receipt of child pornography.

f.   Child pornography can be transferred via electronic mail or through file transfer protocols (FTP) to anyone with access to a computer and modem. Because of the proliferation of commercial services that provide electronic mail service, chat services (i.e., "Instant Messaging"), easy access to the Internet, and online file sharing and storage, the computer is a preferred method of distribution and receipt of child pornographic materials.

g.   The Internet and its World Wide Web afford collectors of child pornography several different venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion. Collectors and distributors of child pornography use online resources to retrieve and store child pornography, including services offered by Internet Portals such as AOL Inc., Yahoo, and Google, Inc., Facebook, Dropbox, Instagram, among others. The online services allow a user to set up an account with a remote computing service that provides e-mail services, file exchange services, messaging services, as well as electronic storage of computer files in any variety of formats. A user can set up an online storage account from any computer with access to the Internet. Email accounts, online storage accounts, and other online communication accounts allow users to save significant amounts of data, including email, images, videos, and other files. The data is maintained on the servers of the providers and is occasionally retained by the providers after the user deletes the data from their account.

h.   A "hash value" is a unique multi-character number that is associated with a computer file. Some computer scientists compare a hash value to an electronic fingerprint in that each file has a unique hash value. Any identical copy of the file will have exactly the same hash value as the original, but any alteration of the file, including even a change of one or two pixels, would result in a different hash value. Hash values represent large amounts of data as much smaller numeric values, so they are used with digital signatures.

i.   In my recent investigative experience, as well as recent discussions with law enforcement officers, I know that individuals who collect child pornography are using email accounts, online storage accounts, and other online communications accounts to obtain, store, maintain, and trade child pornography with growing frequency, in addition to, or as an alternative to, the use of personal devices.

j.   Based on traits shared by collectors, the use of email, online storage accounts, and other online communication accounts, and the increased storage capacity of computers and server space over time, there exists a fair probability that evidence regarding the distribution, receipt, and possession of child pornography will be found in the SUBJECT PREMISES notwithstanding the passage of time.

k.   In addition, computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed

9

via the Internet. Electronic files downloaded to a hard drive can be stored for years at little to no cost. Even when such files have been deleted, they may be recoverable months or years later using readily available forensic tools.

l.    When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space for long periods of time before they are overwritten.

m.    In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages.

n.    The storage capacity of personal computers has increased dramatically over the last few years. Common and commercially available hard drives are now capable of storing over 500 GB of data. With that amount of storage space, an individual could store thousands of video files and/or hundreds of thousands of image files.

o.    Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits. Since the storage capacity of hard drives has increased dramatically over the last several years, it is more likely that the above-described information will be recovered during forensic analysis.

## INSTAGRAM[1]

10.    Instagram is a service owned by Facebook, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510. Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the target account(s) listed in Attachment A, through which users can share messages, multimedia,

---

[1] The information in this section is based on information published by Facebook on its website and its Instagram website, including, but not limited to, the following webpages: "Data Policy," https://help.instagram.com/519522125107875; "Information for Law Enforcement," https://help.instagram.com/494561080557017; and "Help Center," https://help.instagram.com.

and other information with other Instagram users and the general public.

11.     Facebook collects basic contact and personal identifying information from users during the Instagram registration process.  This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers.

12.     Facebook also collects and retains information about how each user accesses and uses Instagram.  This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

13.     Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time.

14.     Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups.  These messages may include text, photos, videos, posts, videos, profiles, and other information.  Participants to a group conversation can name the group and send invitations to others to join.  Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings.  Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot.  Instagram Direct also enables users to video chat with each other directly or in groups.

**PROBABLE CAUSE**

15.    On or about September 17, 2021, the Delaware Child Predator Task Force ("DCPTF") received a cybertip from the National Center for Missing and Exploited Children ("NCMEC"). The cybertip was initiated by Instagram. Per the report, Instagram user "Lil Prince J" with username "Prince_J_126" uploaded a video of suspected child pornography on or about August 13, 2021 via IP address 2601:43:8200:eb70:847b:78cf:77d8:7290. Based on the IP address, the NCMEC was able to ascertain that the violation occurred in Delaware, and thus provided the tip to the DCPTF.

16.    In October 2021, the DCPTF issued a subpoena to Comcast for the aforementioned IP address. Comcast responded and provided that the IP address is assigned to ███████████ ███████████████████████ ("Lexington Drive address"). ██████████ is the mother of PICKETT.

17.    Also in October 2021, the DCPTF issued a subpoena to Facebook for subscriber information pertaining to Instagram user "Prince_J_126." Facebook responded and provided that this account was created with the name "Lil Prince J" and registered email addresses of ███████████@gmail.com" and ████████@hotmail.com."

18.    On December 14, 2021, I obtained a search warrant from the Honorable Sherry R. Fallon, United States Magistrate Judge, for the file associated with the cybertip submitted by Instagram.[2] I reviewed the flagged file and confirmed it depicts child pornography. Specifically, the video file is approximately 25 seconds in length and depicts an Asian male, approximately 10-12 years of age, fully nude with his penis visible. The child masturbates until ejaculation.

---

[2] Case No. 21-351M. Instagram flagged the file as suspected child pornography pursuant to its match to a Hash ID that constitutes known child pornography (MD5 # 00ed3304f265772d99ab57d753c28d95). However, no one from Instagram opened the file and thus a search warrant was obtained.

19.     PICKETT is known to the DCPTF based on a previous investigation. Specifically, the DCPTF, in conjunction with HSI, conducted a criminal investigation into PICKETT from 2017 through 2019 pursuant to a NCMEC cybertip from Dropbox that PICKETT had uploaded child pornography. In May 2019, the DCPTF executed a search warrant at PICKETT's mother's house[3], where PICKETT resided. At the house was PICKETT, his mother, his twin brother, and two minor siblings. During execution of that search warrant, PICKETT made several statements to investigators, including that he uses his phone to access his Facebook and Instagram accounts, and that his Instagram handle is "Prince_J_126."

20.     PICKETT was ultimately arrested, charged, and convicted for violations of Title 11, Delaware Code Section 1109 (Dealing in Child Pornography). PICKETT served approximately two years and was released on May 20, 2021. PICKETT was (and still is) on state probation as a condition of his release.

21.     Upon release, PICKETT went to live with his mother at the Lexington Drive address. At some point, PICKETT was ordered to vacate that residence due to the presence of minors (PICKETT's siblings). PICKETT moved into an apartment in Wilmington, Delaware, although he was permitted to maintain visitation with his mother and siblings at the Lexington Drive address. PICKETT moved out of that apartment in or around the beginning of September 2021 and ultimately moved into a group home in New Castle in or around the end of October 2021, which is the SUBJECT PREMISES and where PICKETT currently resides.

22.     PICKETT is prohibited by the terms of his probation from having any device that can access the Internet. Thus, the device he utilized to transmit the video file on Instagram in August would have needed to be hidden. Based on my training and experience, a cell phone is

---

[3] This was the same ███████████ address that the IP address in the current investigation came back to.

13

typically the contraband device of choice for sex offenders under supervision due to its ability to be easily hidden on one's person or amongst one's belongings in a bedroom, for example. Additionally, PICKETT told investigators in 2019 that he uses his cell phone to access Instagram.

### SUMMARY

23.     In summary, based on the facts detailed above, there is probable cause to believe that PICKETT distributed child pornography via Instagram.  First, a subpoena showed that the relevant     Instagram     account     is     registered     to     ▮▮▮▮▮▮@gmail.com"     and ▮▮▮▮▮@hotmail.com." PICKETT's full name is James Ellis Pickett. In addition, PICKETT previously admitted to investigators that the "Prince_J_126" Instagram account is his account.

24.     Second, a subpoena also revealed that the August 2021 transmission occurred from PICKETT's mother's house, which is where PICKETT attempted to reside once released from prison and where he went for regular visits.

25.     There is also probable cause to believe that contraband, evidence, fruits, and instrumentalities of violations of the SPECIFIED FEDERAL OFFENSES will be found in the SUBJECT LOCATIONS.  First, as discussed above, there is probable cause to believe that PICKETT is a distributor of child pornography who used a digital device to distribute child pornography onto Instagram.  Thus, based on my training and experience, PICKETT has a sexual interest in children as described in paragraphs 8 and 9, *supra*

26.     Second, based on my training and experience, and described further in paragraphs 8–9, *supra*, and paragraphs 26-28, *infra*, individuals who have a sexual interest in children not only tend to collect and distribute child pornography, but tend to use multiple devices to view, collect and send child pornography. They also not only use devices from their place of residence, they sometimes leave their devices in their residence.  This is especially true if such individuals

14

believe they will imminently be searched by law enforcement. Further, computer files or remnants of such files can be recovered months after they have been viewed via the Internet, downloaded onto a storage medium, or even deleted. Therefore, there is probable cause to believe that PICKETT is in possession of at least one device that contains evidence, fruits, and instrumentalities of, and contraband related to the sexual exploitation of children in violation of the SPECIFIED FEDERAL OFFENSES. This warrant seeks authorization to search for and seize all such devices identified as belonging to PICKETT, as more fully described in Attachment B.

### COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

27.     As described above and in Attachment B, this application seeks permission to search for contraband, evidence, fruits, and instrumentalities of violations of the SPECIFIED FEDERAL OFFENSES, that might be found at the SUBJECT PREMISES, in whatever form they are found. One form in which the evidence might be found is as records in the form of data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure and search of computers and storage media and, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

28.     *Probable cause:* I submit that if a computer or storage medium is found in the SUBJECT LOCATIONS, there is probable cause to believe that records will be stored on that computer or storage medium, for at least the following reasons:

> a.     Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

> b.     Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a

computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

29. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described in the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any computer or storage medium in the SUBJECT LOCATIONS because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner.

16

Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.      A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f.      I know that when an individual uses a computer to access with intent to view, possess, distribute, or receive child pornography, the individual's computer will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The computer is an instrumentality of the crime because it is used as a means of committing the criminal offense. The computer is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that a computer used to commit a crime of this type may contain: data that is evidence of how the computer was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

17

30.     *Necessity of seizing or copying entire computers or storage media.*  In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant.  In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media.  Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files.  Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction.  This is true because of the following:

a.      The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence.  Storage media can store a large volume of information.  Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b.      Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations.  Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c.      Variety of forms of electronic media.  Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

31.     *Nature of examination.*  Based on the foregoing, and consistent with Rule 41(e)(2)(B) and in compliance with circuit and district search procedures/protocols, the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would

18

authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

## **CONCLUSION**

32.      Based on the foregoing information, I have probable cause to believe that contraband, evidence, fruits, and instrumentalities of violations of the SPECIFIED FEDERAL OFFENSES as set forth herein and in Attachment B are currently contained in the SUBJECT LOCATIONS, more fully described in Attachment A. I therefore respectfully request that a search warrant be issued authorizing a search of the SUBJECT LOCATIONS for the items described above and in Attachment B, and authorizing the seizure and examination of any such items found therein.

*/s/ Sean Downey*
Special Agent Sean Downey
Homeland Security Investigations

Sworn to me over the telephone and signed by me pursuant to
Fed. R. Crim. P. 4.1 on this 15th day of December, 2021.

Honorable Sherry R. Fallon
United States Magistrate Judge

19

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The property to be searched is:

████████████████████████ (the "SUBJECT PREMISES"). It is a 3 bedroom, 1 bathroom, single family residence.  The SUBJECT PREMISES is a Cape Cod-style home with attic featuring a 1/2 bath.  Delaware law enforcement has been to the residence previously as all occupants are on probation/parole.  Below are photos of the SUBJECT PREMISES:

*(Left) HSI Photo from 12/13/2021*            *(Right) Redfin Real Estate Photo from 02/15/2021*




*Redfin Photo of Shed*



## ATTACHMENT B

## PROPERTY TO BE SEIZED

The following materials, which constitute contraband, evidence, fruits, or instrumentalities

of violations of Title 18, United States Code, Sections 2252A(a)(2) (Distribution of Child

Pornography) and 2252A(a)(5)(B) (Possession of Child Pornography) from May 2021 to present:

1.  All COMPUTERS and STORAGE MEDIA (as defined below) located in the SUBJECT

    PREMISES identified as belonging to James PICKETT ("PICKETT"), including:

    a.  Those found on PICKETT's person;

    b.  Those found in PICKETT's bedroom or sleeping quarters;

    c.  Those found within close proximity to PICKETT's person; and

    d.  Those identified by a resident of the SUBJECT PREMISES as belonging to
        PICKETT.

2.  For the COMPUTERS and STORAGE MEDIA (hereinafter, "DEVICES"):

    a.  evidence of who used, owned, or controlled the DEVICES at the time the things
        described in this warrant were created, edited, or deleted, such as logs, registry
        entries, configuration files, saved usernames and passwords, documents,
        browsing history, user profiles, email, email contacts, "chat," instant messaging
        logs, photographs, and correspondence;

    b.  evidence of software that would allow others to control the DEVICES, such as
        viruses, Trojan horses, and other forms of malicious software, as well as
        evidence of the presence or absence of security software designed to detect
        malicious software;

    c.  evidence of the lack of such malicious software;

    d.  evidence indicating how and when the computer was accessed or used to
        determine the chronological context of computer access, use, and events
        relating to the crime(s) under investigation and to the computer user;

    e.  evidence indicating the computer user's knowledge and/or intent as it relates to
        the crime(s) under investigation;

1

    f.  evidence of the attachment to the DEVICES of other storage devices or similar containers for electronic evidence;

    g.  evidence of programs (and associated data) that are designed to eliminate data from the DEVICES;

    h.  evidence of the times the DEVICES were used;

    i.  passwords, encryption keys, and other access devices that may be necessary to access the DEVICES that are found stored within the DEVICES;

    j.  documentation and manuals that may be necessary to access the DEVICES or to conduct a forensic examination of the DEVICES;

    k.  records of or information about Internet Protocol addresses used by the DEVICES;

    l.  records of or information about the DEVICES' Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

    m.  contextual information necessary to understand the evidence described in this attachment;

    n.  any and all adapters, chargers, or other hardware items necessary to charge the battery, or to maintain the functioning of, the DEVICES;

    o.  records and information relating to the sexual exploitation of children, including files, correspondence, and/or communications about or stored on the Instagram account;

    p.  records and information showing access to and/or use of the Instagram account;

    q.  records and information relating or pertaining to the identity of the person or persons using or associated with the Instagram account; and

    r.  child pornography and child erotica.

3.  Records, information, and items relating to violations of the statutes described above including:

    a.  records, information, and items relating to PICKETT's occupancy of the SUBJECT PREMISES, including utility and telephone bills, mail envelopes, or addressed correspondence;

b. records, information, and items relating to the ownership or use of the DEVICES found in the above residence, including sales receipts, bills for Internet access, and handwritten notes;

c. records and information relating to the identity or location of the persons suspected of violating the statutes described above; and

d. Child pornography and child erotica in any form.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high-speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, laptop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded, including external and internal hard drives, flash drives, thumb drives, micro SD cards, macro SD cards, DVDs, gaming systems, SIM cards, cellular phones capable of storage, floppy disks, compact discs, magnetic tapes, memory cards, memory chips, and other magnetic or optical media.

This warrant authorizes a review of computer and storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law

3

enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.  Pursuant to this warrant, HSI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.